IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MONA PRUNEST, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08cv00185 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

In September 2000 Plaintiff Mona Prunest applied with the Social Security Administration for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). She claimed in her applications that she could no longer work, beginning on August 16, 1999, because she was under a "disability" within the meaning of the Social Security Act. (Tr. 37, 51). Her applications were denied mainly through the written decision of an Administrative Law Judge (ALJ). (Tr. 37-50). Plaintiff did not appeal the ALJ' decision.

In November 2002 Plaintiff filed additional applications for SSI and DIB again claiming a disability onset date of August 16, 1999. (Tr. 91-93, 475-77). Plaintiff's applications were denied at all stages of administrative review including, most

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

significantly, in the written decision of ALJ Thomas R. McNichols, II, who concluded that Plaintiff was not under a "disability" and was therefore ineligible to receive DIB or SSI. (Tr. 13-23). There is no dispute in the present case that the Court has jurisdiction to review ALJ McNichols' decision. *See* 42 U.S.C. §405(g).

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and awarding benefits since the Commissioner's own rulings indicate that a complete inability to stoop significantly erodes the sedentary occupational base. (Doc. #7 at 15). Or , at a minimum, Plaintiff seeks remand of this case to the Social Security Administration to correct certain errors.

The Commissioner seeks an Order affirming the ALJ's decision.

## II.  ADDITIONAL BACKGROUND

### A.  Plaintiff and Her Testimony

At the time of the ALJ McNichols's decision, Plaintiff's age (47 years old) placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§404.1563(c), 416.963(c); *see also* Tr. 22. Plaintiff earned general equivalency diploma (GED) and has worked as a sales clerk and cashier. (Tr. 112, 117).

Plaintiff testified during the ALJ's hearing that she stopped working due to back pain and high blood pressure. (Tr. 492). She was unable to stand very long on the job. Doctors have told her that she has herniated discs and that she was not a candidate for back surgery due to her diabetes and excessive weight. (Tr. 493). Treatment in a pain-management clinic and physical therapy have not helped Plaintiff. (Tr. 493-94).

Plaintiff further testified that she needs to use a walker if she must walk any further than from her house to her car. (Tr. 494). She estimated the intensity of her

typical back pain at eight, on a zero-to-ten scale (zero equaling no pain; ten equaling the worst pain imaginable). (Tr. 501-02).

Plaintiff testified that she also suffers from depression, anxiety, and panic attacks. (Tr. 498). Depression causes her to have suicidal thoughts and constant crying. She explained, "I have no concentration. I have no joy, no pleasure in life anymore. Things I ... could do I can't do anymore, the simplest things.... I can't even take my dog for a walk." (Tr. 499). She further explained, "I used to love to read and ... I can't even read for pleasure much less try to comprehend. I can't stay on task." (Tr. 517).

Plaintiff acknowledged that her high blood pressure and acid reflux was under control with medication. (Tr. 495, 497). She also testified that she did not have side effects from medications once she was regularly taking them awhile. (Tr. 501).

Plaintiff indicated that she underwent surgery on one knee in July 2004. (Tr. 515). The surgery helped until she fell about four months later. By that time, her knee surgeon had told her she would eventually need to have both kneecaps replaced. *Id*. Plaintiff further testified that she has bone spurs in her feet and uses orthotics. (Tr. 516).

Plaintiff explained that she had a heart attack in December 2004 and had a stent inserted into her chest. (Tr. 495). At the time of the ALJ's hearing (November 2005), she continued to experience chest pain a few times a month. She explained, "I have palpitations, occasional chest pain, left arm numbness." *Id*. She smoked cigarettes, about one-half pack per day. (Tr. 500, 512).

She estimated that she could walk from her house to the street, stand for five minutes at a time, sit for one hour at a time. (Tr. 504-05). She can lift a gallon of milk[2] with both hands, and she can button and zip her clothes. (Tr. 505). She drives short

---

[2] One gallon of milk weighs about approximately 8.5 pounds or slightly more than one gallon of water ($\approx$8.33 lbs.). http//:www.wikianswers.com/Q/; *see* http//:www.unc.edu/~rowlett/units/dictG.html.

distances three times a week. (Tr. 491). She uses paper plates rather than dishes because it would take her all week to wash the dishes. (Tr. 507).

Plaintiff visits others including her mother. She went to Florida in March 2005 to visit her sister. (Tr. 508). Pain prevents Plaintiff from sweeping, vacuuming, washing clothes, making beds, going shopping, and going to church. (Tr. 507). She used to paint ceramics and do gardening but does not do so anymore. (Tr. 510). Her daily activities typically include watching television, picking up around the house, and staying in bed 14 to 16 hours a day. (Tr. 512-13).

### B. Additional Evidence

Steven J. Blumhof, D.O., Plaintiff's primary care physician since 1984, treated and monitored Plaintiff for low-back symptoms, left knee symptoms, and psychological symptoms as well as hypertension, obesity, history of left carpal tunnel syndrome, right brachioradialis tendinosis, and diabetes. (Tr. 176-80, 404-41). In February 2003 Dr. Blumhof completed a detailed report describing various MRI results. (Tr. 176-77). He noted, in part, that Plaintiff had a herniated disc, confirmed by a CAT scan in 1989, and disc impingement, confirmed by a December 2001 MRI. (Tr. 176-80). Dr. Blumhof indicated that Plaintiff's ability to sit, stand, and walk was affected due to her lower back pain. (Tr. 179).

An MRI of Plaintiff's lumbar spine in September 2003 revealed a L4-5 disc herniation with thecal sac effacement and facet degeneration, causing central stenosis. And, at L5-S1, a left disc protrusion with bilateral "facet joint arthropathy and hypertrophy" and left foraminal stenosis were noted. (Tr. 440).

In September 2005 Dr. Blumhof completed a functional assessment form. (Tr. 449-53). He opined that Plaintiff could not lift or carry more than 5 pounds at a time. (Tr. 450). He also believed that Plaintiff could not be on her feet more than 3 to 5 minutes at a time or 30 minutes total in an 8-hour workday. *Id.* She could sit 15 minutes at a time but only for a total of 1 hour in an 8-hour workday. *Id.* Dr. Blumhof did not

4

think that Plaintiff should ever climb, balance, stoop, crouch, kneel, or crawl. (Tr. 451). He supported his limitations with respect to no stooping (and other postural work activities) by explaining she was unable "to flex the lumbar spine greater than 15 degrees (HNP)" and was unable to squat or kneel due to her left knee torn meniscus. (Tr. 451). Dr. Blumhof also opined that exposure to most environmental hazards should be limited. (Tr. 452).

Dr. Blumhof referred Plaintiff to neurosurgeon Dr. Scott West in 2002. Dr. West recommended physical therapy, which provided poor results, and a transcutaneous nerve stimulator, which provided fair results. (Tr. 178).

On September 29, 2003, Dr. West saw Plaintiff again for continued back pain. (Tr. 305). Examination revealed tenderness over her lower back upon palpitation, straight leg raising was positive bilaterally, and she could to stand on her heels and toes. *Id.* Dr. West noted that Plaintiff had normal reflexes, no sensory deficits, and positive straight-leg raising at 20 degrees. *Id.* An MRI revealed a small disc herniation at L4-5 and L5-S1, but Dr. Scott recommended continuing conservative treatment rather than surgery due to the presence of only a small disc herniation. *Id.*

On February 20, 2006, Aivars Vitols, D.O., an orthopedic surgeon, examined Plaintiff at the request of the Ohio Bureau of Disability Determination. (Tr. 462-73). He noted that Plaintiff was 5 feet, 3 inches tall and weighed 290 pounds. (Tr. 463). She reported low constant unrelenting low back pain with associated spasms. (Tr. 462). Her low back radiated into her tailbone area, especially when she sits. *Id.*

Dr. Vitols' examination revealed symmetrical and normal reflexes, no muscle wasting, and a slow and antalgic gait, favoring her left leg. Plaintiff leaned on a walker for stability. Dr. Vitols indicated that he could not attest to spasms in Plaintiff's lower back due to her obesity. He noted that Plaintiff had no decreased sensation in her legs. (Tr. 465). A left knee examination revealed decreased range of motion, patellofemoral

5

crepitus, effusion, medial joint tenderness, lateral joint tenderness. *Id.* He indicated that Plaintiff had 70-degree flexion with her lower back. (Tr. 469).

Dr. Vitols diagnosed degenerative arthritis of the left knee, obesity, chronic lumbosacral sprain and strain, and (by history) diabetes, hypertension, and depression. (Tr. 466). He opined that Plaintiff could lift and carry 5 pounds occasionally; stand or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. (Tr. 471). And he thought Plaintiff should never climb, balance, stoop, crouch, kneel, or crawl. (Tr. 472).

A vocational expert testified during the ALJ's hearing that if Plaintiff were limited in the manner the ALJ ultimately found, *see infra*, §III(B), there would be jobs she could do such as surveillance system monitor, toy stuffer, nut sorter. (Tr. 519-21). According to the vocational expert, if it was assumed that a hypothetical person was as limited as the ALJ ultimately found and was further precluded from reaching out or overhead, no jobs would be available for such a person. (Tr. 523).

The vocational expert also stated that there would be 3,200 sedentary jobs available to the same hypothetical person who could also only occasionally lift 5 pounds occasionally and could not frequently lift any amount of weight. (Tr. 524). And, if it was assumed the hypothetical person was further limited to standing and walking a total of 30 minutes in an 8-hour workday and sitting a total of 1 hour in an 8-hour workday, the vocational expert believed no jobs would be available for such a person. (Tr. 524-25).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined and the Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from

performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 12-22; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 73; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). If the ALJ makes "a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730 (citations omitted).

---

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations. *See also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)

## B. ALJ McNichols' Decision

At Step 1 of the sequential evaluation, ALJ McNichols found that Plaintiff met the insured-status requirement for DIB eligibility until December 31, 2004. (Tr. 17). The ALJ also found at Step 1 that Plaintiff has not engaged in substantial gainful activity since his claimed disability onset date of August 16, 1999. *Id.*

At Step 2 the ALJ concluded that Plaintiff has the severe impairments of a history of low back pain; a history of coronary atherosclerosis; chronic left knee pain attributed to arthritis; obesity; and a history of depression. (Tr. 17-19).

The ALJ found at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19).

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> [T]he claimant has the residual functional capacity to do a limited range of sedentary work subject to: 1) alternate sitting and standing as needed; 2) occasional stooping or crouching; 3) frequent kneeling and crawling; 4) no climbing ropes, ladders or scaffolds; 5) no exposure to temperature extremes or humidity; 6) no exposure to hazards; 7) low stress jobs with no production quotas; and 8) no requirement to maintain concentration on a single task or longer than 15 minutes at a time. By definition sedentary work ordinarily requires mostly sitting and the capacity to lift small amounts of weight up to 10 pounds.

(Tr. 19). In light of this assessment, the ALJ also concluded at Step 4 that Plaintiff was able to perform her past relevant work. (Tr. 19-22).

At Step 5 the ALJ determined that a significant number of jobs existed in the regional and national economies that Plaintiff could perform. (Tr. 22). This determination, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a "disability" and was therefore not eligible for SSI or DIB. (Tr. 17-23).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision focuses in part on whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors).

9

Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

V.  **DISCUSSION**

    A.  **The Parties' Contentions**

Plaintiff contends the ALJ erred by rejecting Dr. Blumhof's opinions with little analysis and by merely claiming it was inconsistent with other evidence of record. The ALJ further erred by relying on some of Dr. Vitols' opinions while ignoring – without explanation – his opinion that Plaintiff could only lift 5 pounds occasionally and should never stoop. Plaintiff emphasizes that if Dr. Vitols' and Dr. Blumhof's opinions about her inability to stoop are accepted, the medical evidence combined with the vocational expert's testimony establish that there would be no jobs available to Plaintiff, and that she is therefore under a "disability" within the meaning of the Social Security Act.

The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could perform a range of sedentary work. The Commissioner asserts that the ALJ reasonably weighed the opinions of both Drs. Blmumhof and Vitols, and did not otherwise errs as Plaintiff contends.

    B.  **Medical Source Opinions**

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §416.927(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence

of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §416.927(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §416.927(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.972(d), (f).

C.  **Analysis**

The ALJ's decision in the present case did not separately describe the legal criteria applicable to weighing the opinions of treating physicians or other medical sources. Instead, the ALJ merely stated that he "considered the opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, and 96-6p." (Tr. 20). Without a separate description of the legal

11

criteria actually applied by the ALJ, his decision must be scrutinized to determine whether he "applied the correct legal criteria" when weighing the medical source opinions. *Bowen*, 478 F.3d at 745-46.

Doing so reveals that the ALJ sufficiently considered Dr. Dr. Blumhof's opinions under the correct legal criteria mandated by the treating physician rule, and embodied in 20 C.F.R. 416.927(d)(2), and that the ALJ further considered Dr. Blumhof's opinion under at least some of the remaining regulatory factors. This appears in the ALJ's discussion of Dr. Blumhof's opinions, which states:

> It is acknowledged that Dr. Blumhof, her family doctor has expressed the opinion that she can carry out less than a full-time sedentary work schedule.... This pessimistic evaluation is not given controlling weight as it is poorly supported by the objective findings and is inconsistent with other substantial evidence, including the findings of specialists such as Dr. West and Dr. Vitols. Dr. Blumhof attributes some limitations to impairments such as epicondylitis and chronic bronchitis, even though there are no adequate objective findings underlying these diagnoses. Considering the inconsistency with the rest of the record and the poor degree to which his opinion is supported by objective findings, little weight is accorded the assessment of Dr. Blumhof.

(Tr. 21).

As to Dr. Vitols, however, the ALJ erred by rejecting part of Dr. Vitols' opinion based on the ALJ's own lay interpretation of the very findings Dr. Vitols relied on to support his (Dr. Vitols') opinions. This is seen in the ALJ's reasoning for the work restrictions he set. The ALJ explained:

> For the most part, these restrictions are compatible with the limited sedentary RFC proposed by Dr. Vitols, an orthopedic specialist who furnished perhaps the most comprehensive supporting examination findings in the record.... However, his restriction of the claimant to just five pounds of lifting and his total prohibition of all postural movements are not followed here as such limitations would seem excessive considering the claimant's good motor function and ability to flex her lower spine up to 70 degrees.

12

(Tr. 20). The ALJ erred by relying on his own lay opinion concerning the significance of Dr. Vitols' finding that Plaintiff could flex her spine up to 70 degrees and had good motor function, when Dr. Vitols interpreted the same findings to find Plaintiff unable to lift more than five pounds and unable to perform any postural work activity, like stooping. *See supra,* §II(B) (and citations therein to Dr. Vitols' opinions). "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006)("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004)(ALJ improperly rejected treating physician's opinion "because of the ALJ's own credibility judgments, speculation or lay opinion."); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray..."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998)("In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." (internal citation omitted)); *Gonzalez v. Apfel*, 113 F.Supp.2d 580, 590 (S.D.N.Y. 2000) (same).

       This error, in turn, is problematic as to Dr. Blumhof's opinion because the ALJ relied on his flawed rejection of Dr. Vitols' opinion (about Plaintiff's lifting and postural limitations) as a reason to reject Dr. Blumhof's similar opinion. *See* Tr. 21. Indeed, these two physicians were the only medical sources in the record to offer an opinion about

Plaintiff's lifting and postural limitations and they did not think that Plaintiff should ever stoop or should ever lift more than five pounds. The ALJ compounded his error in substituting his own lay opinion in place of Dr. Vitols' opinion by relying on his flawed view of Dr. Vitols' to reject Dr. Blumhof's opinions.

There remains the possibility that the ALJ's errors were harmless. *See Bowen*, 478 F.3d at 747-49. A review of the opinions provided by Dr. Blumhof reveals that he supported his opinions with detailed explanations and references to objective evidence, thus providing some regulatory reasons for crediting his opinions. *See* Tr. 449-53. Dr. Vitols' report contained even more details, *see* Tr. 462-73, as even the ALJ recognized by characterizing it as constituting "perhaps the most comprehensive supporting examination findings in the record." (Tr. 20). Consequently, their opinions were not so patently deficient that they could not be credited, *see Wilson*, 378 F.3d at 547, and this is not the "rare case"[4] in which a violation of 20 C.F.R. 404.1527(d)(2) can be deemed harmless.

In addition, Plaintiff's morbid obesity and lumbar spine disorder provide objective support for the limitation on lifting and against stooping. An MRI of lumbar spine in December 2001 revealed disc herniation at L5-S1 with right thecal sac effacement, leftward focal disc protrusion at L5-S1 with S1 nerve root impingement as well as disc desiccation at L4-5 and L5-S1. (Tr. 177). A September 2003 MRI showed similar findings. (Tr. 440). In April 2005 a nerve conduction test showed dysfunction in the L4, L5 AND S1 dermatomes. (Tr. 334). An April 2005 MRI continued to show significant changes at multiple levels with suspected "left lateral recess and foraminal encroachment with probably left S1 and potential left exiting L5 nerve root compromise." (Tr. 332).

Clinical examinations have also consistently shown limited range of motion and positive straight leg raising. (Tr. 305, 335, 341-42). A physician in January 2004 noted that Plaintiff's pain increased with flexion. (Tr. 320).

---

[4] *Bowen*, 478 F.3d at 748.

Further, Plaintiff is obese. On September 10, 2004, she weighed 267.5 pounds; on January 7, 2004, she weighed 271 pounds. (Tr. 408, 414). By April, 2005, she weighed 278 pounds. (Tr. 406). Dr. Vitols indicated in February 2006 that Plaintiff weighed 290 pounds. (Tr. 463). A Social Security Ruling recognizes that obesity can exacerbate other problems. "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Social Security Ruling 02-01p, 2000 WL628049 at *6.

In light of this evidence and because the ALJ erred when Dr. Vitols and Dr. Blumhof's opinions concerning Plaintiff's lifting and posture limitations, the ALJ's conclusion that Plaintiff could stoop occasionally or lift 10 pounds is not supported by substantial evidence.

### D. <u>Remand Is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Plaintiff contends otherwise by relying on the vocational expert's testimony that no job would be available to a person restricted to sedentary work with the ability to lift only 5 pounds and with no

ability to stoop. To accept this analysis, however, would require fully crediting the opinions of Drs. Blumhof and Vitols. Since these two physicians' opinions disagree in some respects and since their opinions concerning Plaintiff's lifting and stooping restrictions have yet to be evaluated at the administrative level consistent with the applicable Regulations and Rulings, a judicial award of benefits is presently unwarranted.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria applicable under the Commissioner's Regulation and Rulings and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible for DIB during the time period in question

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Mona Prunest was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


July 10, 2009                                        s/Sharon L. Ovington
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).